(No. 73660.—

THE ILLINOIS STATE TOLL HIGHWAY AUTHOR-
ITY, Appellant, v. HERITAGE STANDARD BANK
AND TRUST COMPANY, as Trustee Under Trust
Agreement Dated March 22, 1979 and Known as
Trust No. 6266, *et al.*, Appellees.

*Opinion filed December 16, 1993.*

NICKELS, J., took no part.
BILANDIC, J., dissenting.

Stephen D. Helm, Scott M. Day and David W. Krula,
of Helm & Day, of Naperville (Frank J. Howard and

Malcolm E. Erickson, of Downers Grove, of counsel), for appellant.

Leo N. Cinquino and Sandra L. Hebenstreit, of Righeimer, Martin & Cinquino P.C., of Chicago, and S. Louis Rathje, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal, the condemnor in a quick-take eminent domain proceeding requests this court to reinstate the trial court's award of interest on a refund of compensation retained by the owner of the condemned property, in violation of the court's order and a provision of the Eminent Domain Act. Ill. Rev. Stat. 1989, ch. 110, par. 7—109.

## BACKGROUND

Plaintiff, the Illinois State Toll Highway Authority (Highway Authority), filed an eminent domain action to take a portion of land owned by Heritage Standard Bank and Trust Company (Heritage) for use in building a toll road. The Highway Authority chose to take immediate title to the land under the "quick-take" provision of the Eminent Domain Act (Ill. Rev. Stat. 1989, ch. 110, par. 7—103) and as part of that process agreed to pay Heritage preliminary compensation for the land in the amount of $1,164,000. The Highway Authority deposited that amount with the county treasurer, pursuant to the Act (Ill. Rev. Stat. 1989, ch. 110, par. 7—105). On August 26, 1987, the trial court entered a quick-take order that caused title to vest immediately in the Highway Authority. The court order also authorized Heritage to withdraw its preliminary compensation from deposit with the county treasurer and provided, in accordance

with section 7—106 of the Act, that if the jury's final verdict of just compensation was less than the preliminary amount paid, Heritage would be required to return the difference.

At the trial to determine the value of the land taken, the jury returned a verdict in the amount of $805,000, which represented the amount of just compensation to which Heritage was entitled. Because Heritage previously had received $1,164,000 as preliminary compensation, the jury's verdict of $805,000 resulted in an "overpayment" of $359,000 to Heritage that was subject to refund. On February 10, 1989, the trial court entered judgment on the jury's verdict of just compensation and ordered Heritage to pay the $359,000 excess compensation by April 14, 1989. Heritage failed to comply with this order. Heritage filed a notice of appeal from the jury's verdict of just compensation. While that appeal was pending, the Highway Authority twice moved in the circuit court, pursuant to section 7—109 of the Act, for entry of judgment in its favor on the overdue refund of $359,000.

Section 7—109 provides:

"If the amount withdrawn from deposit by any interested party *** exceeds the amount finally adjudged to be just compensation (or damages, costs, expenses, and attorney fees) due to such party, the court *shall order such party to refund such excess* to the clerk of the court, *and if refund is not made within a reasonable time* fixed by the court, *shall enter judgment for such excess* in favor of the plaintiff and against such party." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 7—109.)

Heritage objected to the Highway Authority's motions for entry of judgment on the amount of excess compensation, arguing that such relief was premature pending Heritage's appeal from the jury's verdict of what was just compensation for the property. The trial court

agreed with Heritage and denied the Highway Authority's motion for judgment on the refund under section 7—109 of the Act. On January 9, 1991, following the completion of Heritage's appeal from the jury's verdict of just compensation, the trial court entered judgment in favor of the Highway Authority for the principal amount of $359,000 and also granted statutory judgment interest at the rate of 9% from April 14, 1989, the date on which the court previously ordered the refund to be made. Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.

On February 12, 1991, Heritage deposited the principal amount of $359,000, but not the accrued interest, and appealed from the court's award of interest due on the refund. The appellate court reversed that portion of the trial court's award that allowed interest to accrue beginning on April 14, 1989, and held that interest did not begin to accrue until January 9, 1991, the date that judgment was actually entered on the $359,000 refund amount. (225 Ill. App. 3d 567.) The appellate court held that the plain terms of section 7—109 of the Eminent Domain Act require a two-step procedure for entry of judgment on the excess preliminary compensation: first, the court must *order* the party owing the excess compensation to refund it within a reasonable time set in the order; then, if the party owing the refund fails to pay on time, the condemnor is entitled to obtain a *judgment* on the excess compensation. The appellate court further relied on this court's decision in *Department of Transportation v. New Century Engineering & Development Corp.* (1983), 97 Ill. 2d 343, for the proposition that interest did not begin to accrue on the refund of excess preliminary compensation until the trial court entered judgment pursuant to section 7—109. The appellate court accordingly rejected the trial court's attempt to award interest "retroactively" to April 14, 1989, the date on which, by court order and by statute, Heritage

was to have returned the excess compensation. The appellate court further held that the Highway Authority had waived its challenge to the propriety of the trial court's denial of the motions for judgment on the unpaid refund during the pendency of the first appeal.

Justice McLaren dissented, arguing that, as a matter of equity, the trial court's order allowing interest to accrue from the April 1989 date should be affirmed because the trial court did that which ought to have been done initially. (225 Ill. App. 3d at 573-74 (McLaren, J., dissenting).) This court granted the Highway Authority's petition for leave to appeal from the appellate court's decision (134 Ill. 2d R. 315).

We reverse the appellate court and affirm in part and vacate in part the trial court's judgment.

## ANALYSIS

The ultimate issue in this case is whether a creditor may recover judgment interest on a liquidated obligation that the debtor is under court order to pay, pursuant to statute, and the debtor fails to make timely payment. Both parties to the controversy raise issues in this appeal that neither the trial court nor the appellate court fully addressed but which are necessary for a complete understanding of the disposition of this case. For example, the appellate court majority did not examine the propriety of the trial court's refusal to enter judgment on the two occasions that the Highway Authority moved for judgment; instead, the appellate court invoked the waiver doctrine. In so doing, the appellate court failed to examine the right of a condemnor, in quick-take proceedings, to obtain the timely judgment to which it is entitled, plus statutory interest on the judgment in the event of a delay in payment. In part I of this opinion we consider the requirements of a section 7—109 judgment and the issues that the appellate court considered waived. In

part II of this opinion we examine that provision of the judgment interest statute that allows for the accrual of interest on an "award, report or verdict" *before* judgment is entered thereon.

## I

### *Judgment Under Section 7—109 of the Eminent Domain Act*

The Highway Authority argues that the appellate court's decision is both unwarranted under the law of eminent domain and inequitable under the facts of the case. The Highway Authority asserts that "neither section 7—109 nor the *New Century* decision requires a condemnor to obtain a *separate and additional* judgment against [the land owner] upon the latter's willful refusal to refund the excess compensation (in contravention of the trial court's order ***), plus statutory interest." (Emphasis added.)

We reject the Highway Authority's argument that section 7—109 of the Act does not require a condemnor to obtain a judgment on the overdue refund that is separate from and additional to the judgment that is entered on the jury's verdict of just compensation. The terms of section 7—109 are unambiguous and contemplate the entry of judgment only after the party owing the refund of excess preliminary compensation fails to comply with the court's order to pay. Section 7—109 is phrased in mandatory language, directing that the "court *shall order*" the party who owes the refund of excess preliminary compensation to pay it to the clerk of the court, "and if refund is not made within a reasonable time fixed by the court, *shall enter judgment* for such excess in favor of the plaintiff and against such party." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 7—109.) This provision distinguishes between an *order* to pay the excess within

a reasonable time set by court order and the entry of a *judgment* on the refund following the failure of the obligated party to comply with that order. An order to pay in the future is different from a presently enforceable money judgment. *Cf. Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1984), 128 Ill. App. 3d 673, 677 (if an order directs the payment of money only upon the happening of a future event that might never occur, it is not a "judgment" to which "post-judgment" interest applies).

It is important to bear in mind that two judgments, separate and distinct from each other, are involved in the quick-take proceedings in this case. The first judgment, dated February 10, 1989, was entered on the jury's determination of just compensation in the amount of $805,000. This judgment, which established the value of the property taken from Heritage, may be characterized as the judgment on the jury's verdict. The trial court's written *judgment* of February 10, 1989, also contained the court's *order* against Heritage, pursuant to section 7—109, to refund the amount by which Heritage had been overcompensated by April 14, 1989.

The second judgment involved in this case, dated January 9, 1991, was entered against Heritage for its failure to pay the refund of $359,000. This judgment was entered in accordance with section 7—109 of the Eminent Domain Act, for the failure of Heritage to comply with the court's order to repay the excess compensation by April 14, 1989. It was in this second judgment that the trial court awarded interest on the excess payment ordered by the court to be refunded by April 14, 1989, with which order Heritage had not complied.

*Court's Authority to Enter Section 7—109*
*Judgment Pending Appeal*

The Highway Authority argues that entry of judg-

ment for the excess compensation is a ministerial act; since the entry of judgment was ministerial, the trial court clearly erred in denying the Highway Authority's motions for judgment during the pendency of the appeal by Heritage. Accordingly, when the trial court finally entered judgment on the amount due and held that interest accrued beginning April 14, 1989, the court was simply correcting its mistake in not entering judgment when requested by the Highway Authority's motions.

We find persuasive the Highway Authority's argument that section 7—109 calls for the trial court to perform ministerial acts upon the happening of certain events. Since the interested parties are obligated by statute to return any excess preliminary compensation they have received, the trial court's entry of an order compelling compliance has been held "purely ministerial." (See 225 Ill. App. 3d at 572, citing *Department of Transportation v. Roodhouse* (1982), 104 Ill. App. 3d 880, 884.) By extension, the trial court's entry of judgment following Heritage's failure to comply with the order of refund is also ministerial and not discretionary. Therefore, the Highway Authority's motions for entry of judgment on the refund of excess preliminary compensation should have been granted as a matter of law unless the court lacked jurisdiction to enter such a judgment during the pendency of Heritage's appeal.

On the issue of jurisdiction, we note that the February 10, 1989, judgment on the jury's verdict of just compensation was a final disposition of all aspects of the quick-take condemnation proceedings. As such, it was subject to immediate enforcement or appeal. Once a cause is pending on appeal, the trial court loses jurisdiction to alter the judgment. However, trial courts retain jurisdiction after notice of appeal is filed to determine matters collateral or incidental to the judgment. (See *Town of Libertyville v. Bank of Waukegan* (1987), 152

Ill. App. 3d 1066, 1072-73 (notice of appeal from final judgment in condemnation suit did not divest trial court of jurisdiction to hear petition for fees and costs).) Courts also retain authority to compel compliance with their orders through contempt proceedings.

The obligation of Heritage to pay the sum certain on a date certain arose, by operation of law, under section 7—109 of the Eminent Domain Act. Once the jury calculated an amount of just compensation for the land taken that was less than the sum Heritage had received as preliminary compensation, all that was left for the court to do was subtract the larger figure from the smaller and order Heritage to return the balance to the Highway Authority on a particular date. After Heritage failed to pay on the date designated by the court, the Highway Authority was entitled to immediate entry of an enforceable judgment. The trial court retained ancillary jurisdiction to enter judgment, pursuant to section 7—109 of the Eminent Domain Act, on the overdue excess compensation that Heritage owed to the Highway Authority. We determine that section 7—109 *requires* the trial court to enter judgment, upon the condemnor's motion, for the amount of excess preliminary compensation that the property owner owes but has not paid within the time set by the court.

*Effect of the Appellate Process on*
*the Condemnor's Attempt to Collect*
*Section 7—109 Judgment, Plus Interest*

Heritage argues that its appeal from the just-compensation verdict stayed or tolled the entry of judgment on the refund and the accrual of interest. The sole reason that the trial court denied the Highway Authority's motions for entry of judgment on the overdue refund was the argument of Heritage that such judgment would be "premature" pending the outcome of its appeal. Heri-

tage contends that "[s]ection 7—109 bars a judgment prior to completion of the appellate process" and that, as a result, this section "allows a defendant, where quick take is used, to appeal from a jury verdict as in any condemnation case without an interest penalty." In support of the argument that "[f]inal compensation is not adjudicated until the appellate process is complete," Heritage cites *County Board of School Trustees v. Boram* (1962), 26 Ill. 2d 167, 175, and *City of Winchester v. Ring* (1925), 315 Ill. 358, 360.

Both *Boram* and *Ring* involved the application of former section 10 of the Eminent Domain Act (Ill. Rev. Stat. 1959, ch. 47, par. 10 (now section 7—123(a) of the Act)), which addresses concerns quite different from those of section 7—109 of the Act. Section 10 of the Eminent Domain Act gave the property owner in non-quick-take condemnations a right to recover his out-of-pocket expenses, costs, and attorney fees as damages in the event the condemnor dismissed its condemnation petition or failed to pay the adjudicated amount of compensation within the time set by court order following the jury's verdict. (See Ill. Rev. Stat. 1959, ch. 47, par. 10.) Because the fixing of final compensation merely sets the price that the condemnor must pay to take possession and title, but imposes no enforceable obligation to go ahead with the taking, the legislature sought to insure, by enacting section 10, that the property owner would not suffer economic losses in the event the condemnor abandoned the condemnation at some point in the proceedings. As the court in *Boram* explained, the reason for fixing a time in which the condemnor must pay the verdict and take title is to protect the property owner's right to know with certainty when the condemnation is to be consummated. If the condemnor declines to timely pay the property owner his just compensation, as assessed by the jury, the property owner may treat the

condemnation petition as abandoned and recover statutory damages pursuant to section 10 of the Act. If, on the other hand, the property owner chooses to appeal from the just-compensation verdict, the time in which the condemnor must pay the verdict and take title necessarily is tolled during the appeal. The land owner in such case remains in possession of his property until the final adjudication of the just-compensation award.

Neither the *Boram* case nor the *Ring* case supports Heritage's contention that judgment under section 7—109 could not be entered in the instant case until after the appellate process was completed. Heritage fails to explain the relevance of *Boram* and *Ring* to the quick-take proceedings at bar. Both of those cases involved the type of condemnation in which the condemnor was under no obligation to pay the jury's verdict of just compensation and take title to the land. Unlike those cases, in the instant quick-take action, the condemnor had already paid preliminary compensation to the land owner and taken title; therefore, section 10 of the Eminent Domain Act is inapplicable and the cases construing that section are inapposite.

Heritage nonetheless argues that the mere filing of a notice of appeal operates as an *automatic stay*, in condemnation cases, and therefore the trial court could not have entered judgment under section 7—109, nor could judgment interest have begun to accrue. In support of this argument, Heritage cites *City of Chicago v. Albert J. Schorsch Realty Co.* (1972), 6 Ill. App. 3d 1074. However, this court subsequently overruled that case, to the extent that *Schorsch* held that the judgment interest statute did not apply to condemnation verdicts and judgments. (*Department of Conservation v. Jones* (1979), 75 Ill. 2d 557 (explaining the difference between quick-take and regular condemnation proceedings, for purposes of when interest begins to accrue on compensation awards

to property owners).) Although *Schorsch* observed that the jury's verdict of just compensation only establishes a value for the property taken, the *Schorsch* court erroneously concluded that, because there was no judgment upon which execution could issue, interest could not attach pursuant to the Interest Act. This error was based on a narrow view of the Interest Act, which this court specifically discredited in *Jones*. *Schorsch* further concluded that, since execution could not issue on a condemnation verdict, *supersedeas* was not required to stay the proceedings pending appeal.

Unlike the non-quick-take proceeding in *Schorsch*, the case at bar concerns a type of judgment upon which execution may and should issue summarily, through the operation of section 7—109. See also *Town of Libertyville v. Moran* (1989), 179 Ill. App. 3d 880, 883 (rejecting the argument that the mere filing of an appeal in a condemnation case operates as a stay of the judgment).

Heritage further argues that if it had paid the excess compensation to the Highway Authority on the date ordered by the court it would have waived its right to appeal from the jury's verdict of just compensation. Heritage relies on *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, for the principle that a debtor's payment of a judgment waives his right to challenge its correctness on appeal. We do not agree that *Malysa* supports this contention. In *Malysa*, the court applied the general rule that when a judgment has been *voluntarily* paid or the benefits accepted, the question of any irregularity in the judgment becomes moot. The condemnor in *Malysa* paid the verdict and entered into possession of the property before filing its appeal from the compensation verdict. Unlike the voluntary payment tendered in *Malysa*, Heritage was under a court order to pay the money it owed as a result of the jury's verdict. The appellate court in *Alexander Lumber Co. v. Busboom* (1970), 122 Ill. App.

2d 342, 344, stated, "We understand the general rule to be that acts performed in obedience to an order of court do not operate as a release of error and that the payment of judgment under such circumstances does not render the matter moot on appeal." In *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 523, this court held that the judgment debtor's payment of a money judgment does not bar prosecution of the judgment debtor's appeal and additional accrual of interest on appeal may be tolled if the debtor tenders payment plus accumulated interest. See also *Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1982), 92 Ill. 2d 72 (explaining application of the Interest Act to condemnation cases); *Penn Central Co. v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (7th Cir. 1970), 433 F.2d 943, 944 (under Illinois law, interest on a judgment begins from date of its entry after trial and not after exhaustion of appeals); *First National Bank & Trust Co. v. Aluminum Coil Anodizing Corp.* (1980), 86 Ill. App. 3d 842, 844 (interest on a judgment runs in favor of judgment creditor notwithstanding pendency of appeal by either or both sides).

We discern no merit in the arguments that Heritage advances to support the error of the trial court in its refusal to enter the section 7—109 judgment pending appeal. Accordingly, we hold that a judgment for excess compensation under section 7—109 of the Eminent Domain Act should be treated no differently from any other money judgment subject to immediate enforcement unless stayed pending appeal. (See 134 Ill. 2d R. 305; *Town of Libertyville v. Moran,* 179 Ill. App. 3d 880.) The obligation of Heritage to refund the excess preliminary compensation, *plus accumulated interest,* therefore was not tolled pending appeal.

Finally, we reject the argument of Heritage that the imposition of statutory interest in this circumstance con-

stitutes a "penalty" against a land owner for pursuing an appeal in eminent domain. On the contrary, judgment interest that is awarded pursuant to section 2—1303 of the Code of Civil Procedure merely preserves the value of the liquidated obligation by compensating the judgment creditor for delays in payment. (See *Pinkstaff*, 31 Ill. 2d at 525 (policy is to make plaintiff whole by allowing interest to accrue on judgment pending appeal regardless of which party appeals).) A proper tender stays *further* accrual of interest, and therefore, no hardship befalls the judgment debtor. *Pinkstaff*, 31 Ill. 2d 518.

Nothing in eminent domain law compels this court to treat an overdue refund of excess compensation as an exception to the operation of the judgment interest statute. By definition, *"excess* preliminary" compensation falls outside of the "just" compensation to which the land owner is constitutionally entitled. In this case, Heritage enjoyed its legal entitlement to the use of the entire amount of the preliminary compensation pending the trial. Following the verdict, in violation of the court's order, and during the pendency of its own appeal, Heritage was able to invest, for its own benefit, the funds that legally belonged to the Highway Authority. To assess statutory interest on the refund from its court-ordered due date is neither unfair nor improper under Illinois law.

## II

Section 2—1303 of the Code of Civil Procedure provides direct authority for prejudgment accrual of interest and therefore supports the trial court's ruling. Section 2—1303 provides:

> "Interest on Judgment. Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government ***. *When judgment is entered upon any award,*

*report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment.* Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 2—1303.[1]

The emphasized language has been the subject of several decisions of this court. In *E.L. Mansure Co. v. City of Chicago* (1939), 372 Ill. 156, 158, citing *Blakeslee's Storage Warehouses, Inc. v. City of Chicago* (1938), 369 Ill. 480, this court stated, "[S]ection 3 of the Interest Act [now codified as section 2—1303 of the Code] contemplates two classes of interest, namely, interest which accrues *prior* to judgment and, secondly, interest which accrues *after* judgment is entered; *** *interest is not a part of a judgment under section 3 unless it accrues be-*

---

[1]To avoid possible confusion over terminology, we have adopted in this opinion the term "judgment interest statute" to generally refer to section 2—1303. This provision, formerly the Interest Act, provides for interest to accrue on awards, reports, and verdicts as well as judgments. Interest that accrues on reports, awards, and verdicts may be viewed as a form of "prejudgment" interest to distinguish it from the interest that accrues on the judgment itself ("post-judgment" interest). Our reference to "prejudgment" interest in this context is narrow and is not to be confused with the separate provision in the banking and finance statutes that provides for what is commonly referred to as "prejudgment interest" at a rate of 5% on money that is past due, such as bonds, bills, promissory notes, or other instruments of writing; on "money due on the settlement of account from the day of liquidating accounts"; and on "money withheld by an unreasonable and vexatious delay of payment." Ill. Rev. Stat. 1989, ch. 17, par. 6402.

*fore the entry of the judgment \*\*\*."* (Emphasis added.) In *Duffek v. Vanderhei* (1982), 104 Ill. App. 3d 422, the appellate court held that under this provision, trial courts must ascertain the interest accruing upon a verdict and include it in the judgment; that there may be a lengthy delay between the return of verdict and entry of judgment is immaterial.

This court consistently has held that the judgment interest statute applies to eminent domain proceedings notwithstanding the presence or absence of other interest provisions in the Eminent Domain Act itself. *E.g., Commissioners of Lincoln Park v. Schmidt* (1942), 379 Ill. 130, 138 (affirming, under the Interest Act, the accrual of interest before judgment on jury's verdict of just compensation in favor of land owner); *Department of Conservation v. Jones* (1979), 75 Ill. 2d 557, 561 (noting that the Interest Act had been applied to condemnation judgments since at least 1897); *Department of Transportation v. New Century Engineering & Development Corp.* (1983), 97 Ill. 2d 343, 353 (applying "post-judgment" interest provision of the Interest Act to a condemnor's judgment for refund of excess preliminary compensation).

In *Schmidt*, a non-quick-take proceeding, this court affirmed the trial court's entry of judgment that included accrued interest on a jury's verdict of just compensation, stating, "Section 3 of the Interest act expressly provides that a report, award or verdict shall bear interest until judgment is entered. \*\*\* [W]e think it was *mandatory* upon the trial court to ascertain the interest accruing upon the verdict, and include it in the judgment." (Emphasis added.) *Schmidt*, 379 Ill. at 138; see Ill. Rev. Stat. 1945, ch. 74, par. 3 (now section 2—1303 of the Code of Civil Procedure).

The Highway Authority makes reference to this "prejudgment" provision of the interest statute in its

reply brief, but neither the parties to the instant appeal nor the courts below explored the applicability or meaning of the provision relating to interest on a report, award, or verdict. The appellate court in the instant case merely held, "The language of section 7—109 is clear. *** [N]o judgment exists until the court enters a judgment after the failure of the defendant to refund the excess within a reasonable time fixed by the court. Therefore, interest cannot be awarded until that judgment is entered." (225 Ill. App. 3d at 571-72.) This summary disposition of the interest issue is disarming in its simplicity but, in light of the express terms of section 2—1303, is also fatally flawed.

The appellate court, in vacating that portion of the interest award which predated entry of judgment on the refund, found that it was "implicit" in this court's opinion in *New Century* "that a judgment must be entered under section 7—109 *before* interest may be awarded." (Emphasis added.) (225 Ill. App. 3d at 573.) In *New Century*, this court found that nothing in the Eminent Domain Act itself supported the condemnor's claim for interest on its refund of excess preliminary compensation in a quick-take proceeding. However, this court held that once judgment was entered upon the refund, the *Interest Act* (now section 2—1303 of the Code) applied to the judgment. *New Century*, 97 Ill. 2d at 353.

The main issue before the court in *New Century* was whether the two interested parties who had withdrawn the preliminary compensation were jointly and severally liable for the entire amount owed to the condemnor or whether each was liable for only that amount by which the party's withdrawal of preliminary compensation exceeded the amount of final just compensation allocated to that party. This court held that the Act contemplated individual, proportional responsi-

bility instead of joint and several liability. Because of the genuine dispute as to the obligors' relative liability, the amount of refund each party owed could not be reduced to judgment until the dispute was resolved in the trial court's final order. Without extended analysis, the *New Century* court quoted only the first sentence of the judgment interest statute and held that interest on the section 7—109 judgment should be awarded from the day it was entered. Clearly, *New Century* involved only the "post-judgment" provision of section 2—1303. There was no issue before the court respecting the application of that provision of the Interest Act which provides for the accrual of interest on a report, award, or verdict before the entry of judgment thereon. Therefore, *New Century* did not involve the precise issue before us in the instant case and does not preclude the application of that provision of section 2—1303 that allows interest to accrue before entry of judgment.

We believe that the trial court's order against Heritage to pay $359,000 by April 14, 1989, incorporated into the February 10, 1989, judgment order on the jury's verdict, qualifies as an "award" within the meaning of section 2—1303. The obligation arose by operation of law after the jury returned a verdict of just compensation in an amount less than the agreed preliminary compensation deposited by the Highway Authority and withdrawn by Heritage. There was nothing contingent about the statutory obligation of Heritage to refund the money. Section 2—1303 states that interest shall be awarded from the date of the award, report, or verdict until the date of the judgment. The date of the award in the instant case was February 10, 1989. Under the clear meaning of the statute, interest should have begun to accrue from February 10, 1989. When judgment for $359,000 was finally entered, on

January 9, 1991, the accumulated interest from February 10 should have been *"included in the judgment."* (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 2—1301.

Our construction of the "award, report or verdict" provision of section 2—1303 is not without precedent, although the case law reveals a fair measure of confusion. (*E.g., Brownholtz v. Providers Life Assurance Co.* (1925), 236 Ill. App. 494 (allowing interest from the date of a master's report in breach of employment contract action), *aff'd* (1928), 329 Ill. 42; *Board of Education, Springfield Public Schools, District No. 186 v. McCoy* (1984), 123 Ill. App. 3d 1065, 1073 (disallowing interest from the date of the hearing officer's report on the ground that a "report" was not a "judgment").) Most courts confronted with the issue have adhered to the statutory language and allowed interest to accrue on reports, awards, and verdicts from the time when rendered to the time judgment is entered thereon. See *Wirth v. Industrial Comm'n* (1976), 63 Ill. 2d 237, 240-41 (interest is properly allowed on awards as well as judgments); *Edward Electric Co. v. Automation, Inc.* (1992), 229 Ill. App. 3d 89, 105-06 (applying "statutory prejudgment interest" provision of section 2—1303 to an arbitration award from the date it was rendered to the date judgment was entered on the award); *American Vitrified Products Co. v. C.A. McNeely General Contracting & Equipment Co.* (1962), 37 Ill. App. 2d 403 (awarding interest on a referee's report in an action by a seller on an open account); *Wrobel v. Argiris* (1979), 73 Ill. App. 3d 648 (applying predecessor of section 2—1303 to a real estate sales contract arbitration award).

Some courts have held that, to qualify as an award, report, or verdict subject to the accrual of interest before judgment, the sum in question must be the result

of an actual adjudication, as is present in the case at bar, as distinct from the parties' stipulation or settlement agreement. (See *Lorts v. Illinois Terminal R.R.* (1980), 80 Ill. App. 3d 974; *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.* (7th Cir. 1974), 508 F.2d 283, 296.) Our review of the case law suggests that awards, reports, and verdicts are liquidated sums representing adjudications of disputed facts and issues upon which judgment must be entered before the award, report, or verdict can be enforced or appealed through the judicial process. Under the judgment interest statute, the date an award, report, or verdict is rendered is the date on which interest begins to accrue. If there is a delay between the rendering of the award, report, or verdict and entry of judgment thereon, interest shall be assessed from the date the award is made and *included in the judgment* when it is entered. From the date of that judgment forward, "post-judgment" interest applies until the judgment debtor tenders full payment along with any accrued interest. See *Lake County Forest Preserve District v. Vernon Hills Development Corp.*, 92 Ill. 2d at 80.

We conclude that the excess compensation of $359,000 owed to the Highway Authority was an "award" subject to the accrual of interest before judgment, pursuant to section 2—1303 of the Code of Civil Procedure. Such assessment of interest is neither a penalty nor a bonus, but instead a preservation of the economic value of an award from diminution caused by delay.

For the foregoing reasons, we reverse the appellate court's decision. We affirm the trial court's judgment in part, but vacate the judgment only to the extent that interest was awarded from April 14, 1989, rather than from February 10, 1989. The cause is remanded to the circuit court with directions that it modify its judgment

to award that interest which has accrued since February 10, 1989.

*Appellate court reversed;*
*circuit court affirmed in part*
*and vacated in part;*
*cause remanded with directions.*

JUSTICE NICKELS took no part in the consideration or decision of this case.

JUSTICE BILANDIC, dissenting:

I respectfully dissent. Defendant owned a 40.5 acre parcel of land in Woodridge, Illinois. Plaintiff filed an eminent domain action to acquire 11.4 acres of that parcel. Defendant filed a cross-petition for damage to the remainder of the parcel.

On February 3, 1989, the jury returned a verdict awarding $805,000 to the defendant in just compensation for the land taken. The jury also returned a verdict awarding nothing on defendant's cross-petition for damage to the remainder.

On February 10, 1989, a final judgment was entered on the jury verdicts. On the same date an order was entered requiring defendant to refund the excess preliminary compensation by April 14, 1989. Prior to April 14, 1989, defendant commenced to perfect its appeal.

On June 29, 1989, while the appeal was before the appellate court, plaintiff asked the trial court to enter judgment against the defendant for the $359,000 excess which the court previously ordered the defendant to pay on or before April 14, 1989. The trial court denied plaintiff's request for judgment as premature due to the pendency of the appeal.

The plaintiff did not appeal from this adverse ruling. It could have consolidated this issue with the judgment on plaintiff's petition and defendant's cross-petition. This

conscious and deliberate act of the plaintiff regarding its June 29, 1989, motion for judgment on the excess constituted a waiver of the issue.

On March 16, 1990, the appellate court affirmed the judgment of the trial court awarding $805,000 as just compensation for the part taken and no damages on defendant's cross-petition for damage to the remainder. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5.

On October 3, 1990, this court denied defendant's petition for leave to appeal. The mandate of the appellate court was received by the trial court on November 26, 1990. This concluded the eminent domain case.

It is significant to note that this case is a supplemental proceeding to enforce the January 9, 1991, judgment of the circuit court of Du Page County against the defendant in the sum of $359,000 plus interest at 9% from April 14, 1989. The defendant deposited $359,000 with the clerk of the circuit court on February 12, 1991. This satisfied the principal portion of the judgment. This appeal challenges the propriety of the interest portion of the January 9, 1991, judgment.

The majority of this court takes the appellate court majority to task for not examining the propriety of the trial court's order denying plaintiff's June 29, 1989, motion for judgment as premature due to the pendency of the appeal.

As previously stated the plaintiff did not appeal from that order. The first appeal was disposed without deciding this issue because the plaintiff did not seek to have it reviewed. This is a classic case of waiver. The issue has been properly interred, by plaintiff's own choice, and this court has no right or obligation to resurrect it.

Once again, on appeal in this supplemental proceeding, the appellate court correctly stated: "The propriety of the trial court's denial of plaintiff's motion for refund

as premature during the pendency of the defendant's first appeal has not been raised or argued in this appeal; therefore, this issue is waived ***." 225 Ill. App. 3d at 567.

The appellate court majority properly construes the unambiguous language of section 7—109 to effectuate the clear legislative intent. No judgment was entered in this case until January 9, 1991. The principal amount was paid on February 12, 1991. Accordingly, interest may be awarded on the judgment from January 9, 1991, until February 12, 1991.

I would affirm the appellate court.