2023 IL App (1st) 220287-U

FIFTH DIVISION
February 17, 2023

No. 1-22-0287

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF ELMEDINA MEHIC, | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | |
| and | No. 20 D 230093 |
| MUHIDIN MEHIC, | |
| Respondent-Appellant. | Honorable Jeanne M. Reynolds, Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    ***Held:*** The respondent waived formal service of the petitioner's petition for rule to show cause because he voluntarily appeared at and participated in the indirect civil contempt proceedings. Personal jurisdiction attached to the respondent in the indirect civil contempt proceedings. Because the respondent failed to provide this court with a complete record on appeal, we must presume the court acted in conformity with the law and had a sufficient factual basis for its findings. We affirm.

¶ 2    Petitioner Elmedina Mehic filed a petition for dissolution of marriage seeking a divorce from her husband, respondent Muhidin Mehic. Muhidin was served with the petition for dissolution, but did not participate in the case. The circuit court entered a judgment for dissolution

of marriage, a uniform order of child support, and a judgment for allocation of parental responsibilities. Elmedina filed a petition for rule to show cause after Muhidin failed to pay child support. Following two hearings on the petition for rule to show cause, the court found Muhidin in indirect civil contempt and committed him to jail until he purged his child support delinquency. Muhidin appeals the circuit court's orders, arguing that he was never served with either the petition for rule to show cause or the court order entering that petition and, therefore, the court had no personal jurisdiction to adjudicate the petition. He also argues that the court abused its discretion when it entered the order on Elmedina's petition for rule to show cause We find the circuit court had personal jurisdiction to adjudicate the petition for rule to show cause and that the court properly entered the order on Elmedina's petition. We affirm.

¶ 3                          BACKGROUND

¶ 4     On February 24, 2020, Elmedina filed a petition for dissolution of marriage from Muhidin. The parties were married in 2007 and had two minor children. After a sheriff's deputy unsuccessfully attempted service of the petition, the circuit court granted appointment of a special process server, who successfully served Muhidin with the petition on May 29, 2020.

¶ 5     Elmedina moved for default judgment on July 2, 2020, because 30 days had elapsed since service, but neither Muhidin, nor counsel on his behalf appeared.

¶ 6     On August 12, 2020, the circuit court entered a uniform order of support requiring Muhidin to pay $1,000 per month in child support and a total of $2,000 in retroactive child support. The court also entered a judgment for dissolution of marriage and a judgment for allocation of parental responsibilities and parenting plan.

¶ 7     On May 4, 2021, Elmedina filed a petition for rule to show cause, arguing that Muhidin should be found in indirect civil contempt because he failed to comply with the circuit court's

orders for payment of child support and related expenses. The court entered an order on the rule to show cause on May 27, 2021, ordering Muhidin to appear on June 28, 2021 to show cause as to why he should not be held in indirect civil contempt. The court again appointed a special process server to facilitate service of the order on rule to show cause, but numerous attempts to serve Muhidin were unsuccessful. However, on August 16, 2021, the court entered a continuance order reflecting that Muhidin retained counsel Andjelko Galic, that Galic appeared at the continuance hearing, and that Galic would be filing his appearance on August 20, 2021. Galic finally filed his appearance on September 7, 2021.

¶ 8    After a few more continuances, counsel for Elmedina filed a motion to withdraw his representation, but the circuit court never entered an order disposing of that motion and counsel continued to represent Elmedina.

¶ 9    On January 10, 2022, the circuit court conducted a hearing and entered an order of adjudication of indirect civil contempt for failure to pay child support. Muhidin appeared at the hearing, represented by counsel. The court found that Muhidin was $11,286 in arrears of child support payments. Muhidin failed to provide any legally sufficient reason for failure to comply with the order for child support and that the court found that his failure to comply with the order was willful and contumacious. The court found no proof of payment by Muhidin "other than $6,377 admitted by [Elmedina]." The court also concluded that Muhidin failed to submit a financial disclosure statement and that his testimony was not credible. The court stayed a commitment of Muhidin until February 9, 2022, pending a partial purge payment of $7,000 and proof of a $400,000 life insurance policy payable to Elmedina for the benefit of their children. In addition, Elmedina was required to bring receipts to demonstrate that Muhidin failed to pay related child-care expenses, health expenses, school fees, and extracurricular activities for the children,

along with proof that she had tendered the receipts to Muhidin. The court continued the case for status on February 16, 2022.

¶ 10     The next day, Elmedina filed a motion to compel Muhidin to seek gainful employment and to maintain a job diary.

¶ 11     On February 16, 2022, the circuit court conducted another hearing on the rule to show cause and entered a second order of adjudication of indirect civil contempt, this time also finding Muhidin $11,286 in arrears in child support payments. Muhidin appeared at the hearing, represented by counsel. Muhidin failed to file a motion or response to the rule to show cause and the court found his testimony not credible. The court found Muhidin in indirect civil contempt for failure to pay child support and related child-care expenses. Muhidin also failed to pay the partial purge amount ordered by the court on January 10 and, therefore, the court ordered Muhidin committed to jail until paying a purge totalling $7,500. The court entered and continued generally Elmedina's motion to compel Muhidin to seek gainful employment and maintain a job diary. Finally, the court continued the case to March 31, 2022 for status on the contempt order and on Muhidin's February 16, 2022 motion to reconsider.

¶ 12     The record also reflects that Muhidin filed a motion to reconsider the order entered on January 10, 2022. A notice of filing of the motion, dated February 16, 2022, is included in the record, however, the motion itself is not included in the record.

¶ 13     Muhidin filed a notice of appeal on February 28, 2022, contesting the February 16, 2022, order and all prior orders in the procedural progression thereto.

¶ 14                                     ANALYSIS

¶ 15     On appeal, Muhidin argues that the circuit court erred when it found him in indirect civil contempt because he was served neither with the petition for rule to show cause, nor with the court

order entering the rule to show cause. As a result, he contends the court lacked personal jurisdiction to adjudicate Elmedina's rule to show cause petition. He also argues that the court abused its discretion when it entered the order on Elmedina's petition for rule to show cause.

¶ 16    As a preliminary matter, we note that our review of Muhidin's appeal is hindered by his failure to fully comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which "governs the form and content of appellate briefs." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Rule 341(h)(1) requires an appellant to provide a summary statement, entitled "Points and Authorities," of the points argued and the authorities cited in the argument. Ill. S. Ct. R. 341(h)(1) (eff. Oct. 1, 2020). The "Points and Authorities" section "shall consist of the headings of the points and subpoints *as in the Argument*, with the citation under each heading of the authorities relied upon or distinguished, and a reference to the page of the brief on which each heading and each authority appear." (Emphasis added.) *Id.*

¶ 17    In this case, although Muhidin did include a "Points and Authorities" section in his opening brief, it woefully fails to comply with Rule 341(h)(1), as it lacks proper headings delineating the points and subpoints relating to the arguments in the brief. Instead, Muhidin provided a few citations in numeric order and occasional quotations from authorities he relied upon in the argument section of his brief. Further, the improperly presented "Points and Authorities" section lacks any references to the pages of the brief on which each heading and each authority appear.

¶ 18    Moreover, Rule 341(h)(9) requires the appellant to provide an appendix, including a table of contents to the record on appeal. Ill. S. Ct. R. 341(h)(9) (eff. Oct. 1, 2020). Muhidin has failed to include a table of contents for the record on appeal.

¶ 19    Our rules require that appellants' briefs contain all the materials described and they are not mere suggestions; they are rules which must be followed. *In re Marriage of Hluska*, 2011 IL App

(1st) 092636, ¶ 57. "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal." *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). In addition, this court may strike an appellant's brief for noncompliance with Rule 341. *People v. Thomas*, 364 Ill. App. 3d 91, 97 (2006). Striking a brief or dismissing an appeal for failure to comply with supreme court rules is, however, a harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Noting that the interests of minors are at stake, and finding that Muhidin's lack of compliance with Rule 341 does not preclude our review, we will consider the merits of this appeal based on the deficient brief presented. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) (reviewing court has choice to review merits, even in light of multiple Rule 341 mistakes).

¶ 20   Before turning to the merits of this appeal, however, we must exercise our independent duty to consider whether we have jurisdiction and whether to dismiss it for lack of jurisdiction. *Williams Montgomery & John, Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536 (1984)). Muhidin states in his opening brief that jurisdiction in this case arises under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016).

¶ 21   According to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016):

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties is not enforceable or

appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of the parties."

"This rule [is] meant to 'discourage piecemeal appeals in the absence of a just reason and to remove the uncertainty which existed when a final judgment was entered on fewer than all of the matters in the controversy.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 464 (1990)). "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998).

¶ 22    An exception to this rule exists for appeals from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Under Rule 304(b)(5), the circuit court issuing the contempt order and resulting sanction does not need to make an express finding that "there is no just reason for delaying either enforcement or appeal or both" under Rule 304(a). *Id*. However, "only a contempt *judgment that imposes a sanction* is a final, appealable order." (Emphasis in original.) *Gutman*, 232 Ill. 2d at 152; see also *Valencia v. Valencia*, 71 Ill. 2d 220, 228 (1978) ("Generally, it is held that where no punishment has been imposed an order adjudicating one to be in contempt is not final and is not reviewable.").

¶ 23    In this case, the circuit court found Muhidin in indirect civil contempt and ordered a commitment of Muhidin on February 16, 2022. On the same day, Muhidin filed a motion to reconsider, but contested the court's January 10, 2022 order finding him in indirect civil contempt, not the February 16, 2022, order. Indeed, the record reflects that Muhidin filed his notice of appeal on February 28, 2022, while his motion to reconsider remained pending. However, Rule 304(b)(5)

provides that the entry of an order finding a person in contempt of court is appealable "without the finding required for appeals" under Rule 304(a). See Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Considering that the circuit court entered an order under Rule 304(b)(5) on February 16, 2022, we find that we have jurisdiction under this rule even though Muhidin filed his notice of appeal before the circuit court adjudicated the motion to reconsider.[1]

¶ 24     We now turn to the merits of the appeal. Muhidin first argues that the circuit court erred when it entered an order on Elmedina's petition for rule to show cause and the resulting findings of indirect civil contempt because he was neither served with the petition nor the order entering the petition.

¶ 25     Our supreme court has explained that "[v]ital to the administration of justice is the inherent power of courts to compel compliance with their orders." *Sanders v. Shephard*, 163 Ill. 2d 534, 540 (1994). "In pursuit of that purpose, a party may be held in civil contempt for wilfully failing to comply with a court order." *In re Marriage of Harnack and Fanady*, 2022 IL App (1st) 210143, ¶ 46. "Civil contempt proceedings 'are coercive, that is, the civil contempt procedure is designed to compel the contemnor to perform a specific act.' " *Id.* (quoting *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 52). "Once the party bringing the contempt petition establishes a *prima facie* case of disobedience of a court order, the burden shifts to the alleged contemnor to prove that the failure to comply was not willful or contumacious and that there exists a valid excuse for his failure." *Id.*

---

[1]     Generally, upon the filing of a notice of appeal, the appellate court's jurisdiction immediately attaches and the circuit court is divested of jurisdiction to enter any orders of substance which would modify the judgment or its scope. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). The circuit court, however, retains jurisdiction to decide matters of independent of and collateral to a judgment and to enforce its orders. *In re Marriage of Steinberg*, 302 Ill. App. 3d 845, 849 (1998). "Courts also retain authority to compel compliance with their orders through contempt proceedings." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 290 (1993).

¶ 26    "Indirect civil contempt sanctions may not be imposed upon an individual unless he or she has been accorded due process of law with respect to the contempt charges." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 52 (1990). However, the court in *Betts* distinguished the process due when sanctions are imposed in a civil proceeding as opposed to a criminal proceeding. " 'In civil contempt, the contemnor is entitled to minimal due process,' " which includes "notice and opportunity to be heard." *Betts*, 200 Ill. App. 3d at 53 (quoting *Shillitani v. United States*, 384 U.S. 364, 371 (1966)). Notice "must, of course, contain an adequate description of the facts on which the contempt charge is based and inform the alleged contemnor of the time and place of an evidentiary hearing on the charge within a reasonable time in advance of the hearing." *Id*. Pertinent here, "[a]n individual charged with indirect civil contempt may waive service of written notice of the charge by voluntarily appearing in court and defending against the charge." *Id*. (citing 17 C.J.S. *Contempt* § 79, at 201 (1963)).

¶ 27    In a similar case, this court in *Harnack* found that the respondent contemnor, Fanady, waived any objections he had based on inadequate notice because he voluntarily appeared before the court and failed to object to improper service:

"Additionally, Fanady's argument that he was unaware that a rule issued is incredible, as Fanady has never disputed that he failed to comply with the court's order, and accordingly, the issuance of a rule against him was inevitable. Despite Fanady's appellate contentions to the contrary, the record shows that Fanady understood the court's procedure and knew that the court intended to hold an evidentiary hearing on February 9, 2021, as to Harnack's petition, with the rule to issue *instanter*, at which time Fanady could provide whatever evidence he had to avoid a contempt finding. At no time during the hearing did Fanady inform the

court that he was unaware that a rule had issued or that he was unprepared to proceed. Accordingly, Fanady waived any objections based on inadequate notice."

*Harnack*, 2022 IL App (1st) 210143, ¶ 69.

¶ 28    In this case, the record shows that, despite Elmedina's numerous attempts at personal service, including the appointment of a special process service, she was unable to serve Muhidin with the petition for rule to show cause or the order entering the petition. Nevertheless, Muhidin voluntarily appeared and participated in the indirect civil contempt proceedings against him after the circuit court entered the petition. Galic filed his appearance and began his representation of Muhidin in August 2021. Filing an appearance alone does not subject a party to jurisdiction. See 735 ILCS 5/2-301(a) (West 2020) (a defendant may make a special appearance to object to the court's assertion of personal jurisdiction over him, so long as such appearance is made prior to filing any other pleading or motion). The common law record, however, is devoid of any objection by Muhidin to personal jurisdiction in the circuit court and the record does not contain a transcript of the indirect civil contempt proceedings. The supreme court explained that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Here, because Muhidin failed to include a transcript or a suitable substitute in the record on appeal (see *e.g.*, Illinois Supreme Court Rule 323(c) (eff. July 1, 2017)), the *Foutch* presumption of correctness governs. We must presume that personal jurisdiction properly attached here.

¶ 29    Here, both the January 10, 2022, and February 16, 2022, indirect civil contempt proceedings reflect that Muhidin appeared in person, participated and testified during the hearing, and was represented by counsel. Both orders specifically state that a Bosnian interpreter was provided for Muhidin and that the court "heard the testimony of the parties and witnesses, together with all pleadings, exhibits, and arguments of counsel." While Muhidin suggests that his due process rights were violated, he clearly appeared at both indirect civil contempt hearings, was represented by counsel, and had an opportunity to be heard. Accordingly, we find no due process violation occurred and that personal jurisdiction attached.

¶ 30    Muhidin also argues that the circuit court abused its discretion when it entered the order on Elmedina's petition for rule to show cause. Muhidin's claim largely depends upon what transpired at the hearing on May 27, 2021, when the court considered Elmedina's petition. We are unable to determine, however, whether the circuit court erred when it entered the order on the petition because we do not have a transcript delineating the factual basis for its findings. See *Foutch*, 99 Ill. 2d at 392 ("We cannot divine the trial court's reasoning in denying defendant's motion and cannot determine whether the decision constituted an abuse of discretion."); see also *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985) (holding that, when the record is incomplete, a reviewing court must indulge "every reasonable presumption" in favor of the judgment that is appealed, "including that the trial court ruled or acted correctly"). On this basis, we are compelled to affirm the circuit court's judgment.

¶ 31                                  CONCLUSION

¶ 32    We find Muhidin waived formal service and his challenge that personal jurisdiction did not attach to him when he voluntarily appeared and participated in the hearings that resulted in indirect civil contempt findings against Muhidin. We also conclude the circuit court properly entered the

order on Elmedina's petition for rule to show cause and the findings of indirect civil contempt thereafter. Muhidin failed to provide this court with a complete record on appeal. Therefore, we must presume the court acted in conformity with the law and had a sufficient factual basis for its findings. We affirm the judgment of the circuit court of Cook County.

¶ 33     Affirmed.